O

# United States District Court
# Central District of California

| | |
|---|---|
| RICHARD CLINTON FOSHEE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>　　　　　Defendants. | Case № 8:23-cv-00375-ODW (JDEx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I.　INTRODUCTION

From March 18 to 21, 2025, the Court held a bench trial in this action. Plaintiff Richard Clinton Foshee tried one claim against Defendant United States of America—negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*—for a motor vehicle collision involving a United States Postal Service ("USPS") employee. The parties submitted documentary evidence and elicited testimony from the following witnesses: Foshee, Ahmad Haidary, Sandra Labastida, Dr. Fardad Mobin, Tyler Thompson, Albert Chavez, Dr. Kenneth Tenny, Jan Roughan, Ben Molnar, Dr. Brian Rudin, Dr. Jesse Wobrock, Dr. Hyman Gross, Todd Roescher, Dr. Michael Brant-Zawadzki, Dr. Ilan Danan, and Dr. Charles Hinkin. Additionally, the Court engaged in its own questioning of witnesses.

Having carefully reviewed and considered the evidence and arguments of counsel as presented at trial and in their post-trial written submissions, the Court issues the following findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52(a). To the extent any finding of fact constitutes a conclusion of law, it is adopted as such, and vice versa.

## II.   FINDINGS OF FACT

1. Foshee is a real estate agent. He played football in his youth. As an adult, Foshee trained in Brazilian jiu jitsu for ten to twelve years and mixed martial arts ("MMA") for a few years. Brazilian jiu jitsu primarily involves grappling, similar to high school wrestling. Head strikes are prohibited but occasionally occur. Foshee has competed in dozens of Brazilian jiu jitsu competitions; he was a champion competitor and Pan American champion through the International Brazilian Jiu Jitsu Federation. He did not wear headgear when training and competing in jiu jitsu.

2. While practicing these sports, Foshee experienced having his "bell rung" a number of times. He also experienced neck and back stiffness from his jiu jitsu and MMA training. Most jiu jitsu athletes have neck related complaints at some point. In 2020, Foshee saw a chiropractor for neck and back issues.

3. Foshee's pre-accident medical records also reflect complaints of brain fog, difficulty focusing, and possible attention deficit disorder.

### A.   Collision

4. On March 6, 2021, at approximately 3:39 p.m., Ahmad Haidary was delivering mail within the course and scope of his employment with the USPS in a USPS-owned postal vehicle (the "LLV"). That afternoon, Haidary had parked at the curb facing northbound on Ashland Drive in Laguna Hills, California.

5. At the same time, Foshee was driving a Chevrolet Cruze ("Cruze") northbound on Ashland Drive. The parties concur that Foshee was driving at 25 mph.

6. Preparing to pull away from the curb, Haidary looked in his left mirror, right mirror, and left mirror again, and he signaled his intent to reenter Ashland Drive.

Haidary saw the Cruze in his left mirror and estimated that Foshee was approximately 200 to 300 feet back. Haidary pulled away from the curb.

7. Foshee saw the LLV pull away from the curb and swerved to the left to avoid it.

8. The LLV and the Cruze made contact twice. First, the LLV's front driver-side bumper impacted the Cruze's front passenger-side corner. Second, the LLV's front driver-side bumper impacted the Cruze's rear passenger-side panel. The two impacts occurred within half a second.

9. At the moment of collision, Haidary was traveling no more than 6 mph.

10. Foshee's body was not "out of position" at the time of impact.

11. Foshee did not hit his head or lose consciousness during the collision.

12. Foshee applied the brakes and brought the Cruze to a stop within a short distance.

13. The collision was minor and caused slight physical damage to both vehicles.

14. Haidary was not injured in the collision.

15. Foshee got out of the Cruze, walked over to Haidary, and informed Haidary that Foshee and his children in the car were okay. Foshee took several pictures of the accident scene immediately following the accident.

16. USPS Supervisor Sandra Labastida arrived and investigated the collision on behalf of the USPS. Foshee did not cooperate with Labastida's investigation and refused to provide his information until she summoned the police.

17. Labastida did not observe any visible bumps or bruises on Foshee and did not observe Foshee experiencing any distress. She did not call for an ambulance because she did not feel that it was needed. Labastida saw Foshee get back into the Cruze and drive to the nearby park, where his children got out of the car and ran into the park.

18. The Cruze was drivable following the collision.

19. Labastida completed a required form report about the collision. She described the accident as: "customer hit postal vehicle while carrier leaving curbside." The form provided pre-filled field options for Labastida to select. From those options, she indicated that Haidary "[f]ail[ed] to check clearance." This selection is inconsistent with the Court's finding that Haidary checked both mirrors before pulling into the street.

**B.  Medical Treatment**

20. Later that same day, Foshee went to Kaiser Urgent Care.

21. Foshee reported at Kaiser Urgent Care that he had not lost consciousness or sustained any head trauma and that his airbags had not deployed. Foshee complained of mild nausea and pain in his left upper and lower back as well as his neck. He reported that he did not have any numbness, tingling, or weakness.

22. A physical examination showed that he had normal range of motion and no bony tenderness in his cervical and lumbar regions.[1] A neurological examination was normal, showing he was alert and oriented to person, time, and place, with normal motor skills and gait. Kaiser Urgent Care diagnosed Foshee with neck muscle strain, low back muscle strain, and nausea, and prescribed him medications for each. He was discharged the same day.

23. In subsequent months, Foshee reported neck and back pain and stiffness, muscle strain, headaches, and radiating numbness down his shoulder to his hand and fingers. He complained of memory fog, forgetfulness, and difficulty focusing.

24. Foshee had CT scans, MRIs, and x-rays taken. His brain MRI results were normal. The other imaging scans showed degenerative changes and spondylosis of the cervical spine affecting C5/C6 and C6/C7 in particular. They showed an old alignment dysfunction in his lower back at L5/S1 that was reported as "not severe."

25. Foshee did physical therapy, saw a chiropractor, and had cervical epidural steroid injections. Eventually, he underwent spinal fusion surgery at his C5/C6.

---

[1] The cervical spine region is the neck area, and the lumbar spine region is the lower back area. Spine Structure and Function, Cleveland Clinic, https://my.clevelandclinic.org/health/body/10040-spine-structure-and-function (last visited Oct. 7, 2025).

### C. Medical Findings

26. Dr. Rudin testified credibly and persuasively that Foshee has a long history of degenerative disk disease and chronic bone spurs unrelated to the collision. The collision did not cause Foshee acute nerve damage or contribute to his radicular symptoms, which are unrelated to the collision.

27. Dr. Brant-Zawadzki testified credibly and persuasively that Foshee's scans showed no objective evidence of acute trauma to Foshee's cervical spine or brain. The functional MRI ordered and interpreted by Foshee's expert neurologist Dr. Gross is not reliably used to diagnose individuals, as Dr. Gross proposes. Using a functional MRI in the way Dr. Gross proposes goes against guidance and major practice in the field.

28. Drs. Danan and Hinkin both testified credibly and persuasively that Foshee did not suffer any brain injury from the collision and Foshee's reported neuro-cognitive deficits are not a result of the collision.

29. The collision caused only cervical and lumbar soft tissue strain. Beyond this soft tissue strain, Foshee's cervical and lumbar symptoms are unrelated to the collision. Foshee's cervical and lumbar spine injections are unrelated to the collision. Foshee's cervical spinal fusion surgery was medically reasonable but unrelated to the collision. Foshee's traumatic brain injury complaints and current neuro-cognitive state are unrelated to the collision.

30. Past medical care that is reasonable and related to the collision includes the treatment Dr. Rudin recommended: the Kaiser Urgent Care visit, a follow up visit, anti-inflammatory and muscle relaxant medications, and twelve to eighteen visits with a chiropractor or physical therapist. Dr. Mobin's recommendations regarding Foshee's past and future medical treatment are excessive, extreme, and unreasonable.

31. No future medical care is necessary as a consequence of the collision.

**D.     Damages Methodology**

32.    The methodology of Foshee's medical billing expert and lifecare planner, Roughan, for calculating the reasonable value of medical expenses is more persuasive and thorough than the United States's medical billing expert, who did not testify.

33.    However, in calculating the total damages, Roughan simply added up every aspect of treatment that Dr. Mobin recommended. As Dr. Mobin's recommendations for past and future medical treatment are excessive and unreasonable, so too are Roughan's ultimate calculations.

34.    Accordingly, the Court utilizes Roughan's comprehensive listing of Foshee's medical care and treatment to identify the elements that Dr. Rudin recommends as reasonable and related to the collision. The Court then applies Roughan's medical billing methodology to those entries to calculate Foshee's reasonable medical expenses.

### III.    CONCLUSIONS OF LAW

1.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Foshee's claims arise under federal law.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Foshee's claims occurred in this judicial district.

3.    Foshee asserts a single claim for violation of the FTCA: that Haidary negligently operated the LLV and caused Foshee's injuries.

4.    Cases brought under the FTCA are governed by the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, the Court applies California law because the collision occurred in California.

5.    To have a cognizable claim under the FTCA, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of their employment under circumstances where the United States, if it were a private individual, would be liable. 28 U.S.C. § 2674.

6. Under the FTCA, the United States is liable in the same manner and to the same extent as a private individual under like circumstances. *Id.* It is not liable for interest prior to judgment or for punitive damages. *Id.*

7. To establish a claim for negligence under California law, a plaintiff must prove: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; (3) causation; and (4) damages. *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001).

8. The plaintiff has the burden to prove that it is "more likely than not that the conduct of the defendant was a cause in fact of the result." *Id.*

**A.  Haidary's Negligence**

9. The United States does not dispute that Haidary owed Foshee a duty of care and breached that duty. (*See generally* Def.'s Proposed Findings Fact & Conclusions Law, ECF No. 68.)

10. Indeed, Haidary owed a duty to use ordinary care in the operation of his LLV. *See Cabral v. Ralphs Grocery Co.*, 51 Cal. 4th 764, 771 (2011) ("[E]ach person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances.'"); *Francis v. City & County of San Francisco*, 44 Cal. 2d 335, 339 (1955) (noting that the driver of an automobile "must exercise the care required of a reasonable and prudent person under the existing circumstances").

11. The preponderance of the evidence presented at trial established that Haidary checked his side mirrors, saw Foshee's Cruze approaching, and nevertheless pulled away from the curb to reenter Ashland Drive. Failure to wait until the road was clear was a breach of Haidary's duty of care.

12. The United States will be liable for Foshee's injuries if the collision was a substantial factor in causing them. *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997), *as modified on denial of reh'g* (Oct. 22, 1997).

13. Foshee established by a preponderance of the evidence that the collision was a substantial factor in causing his soft tissue neck and back muscle strain. However,

the preponderance of the evidence does not support that the collision was a substantial factor in causing injuries beyond the soft tissue neck and back muscle strain.

14. Foshee also established by a preponderance of the evidence that he incurred damages, by way of his medical treatment for the neck and back strain and the associated expenses.

**B.     Foshee's Negligence**

15. Foshee also owed a duty to use ordinary care in the operation of his vehicle. *See Cabral*, 51 Cal. 4th at 771; *Francis*, 44 Cal. 2d at 339.

16. The preponderance of the evidence presented at trial established that Foshee saw Haidary start to pull away from the curb and did not slow down but instead attempted to pass when it was not safe to do so. Failure to drive in a reasonably safe manner was a breach of Foshee's duty of care. *See* Cal. Veh. Code § 21750(a) (requiring the "driver of a vehicle overtaking another vehicle proceeding in the same direction [to] pass to the left at a safe distance without interfering with the safe operation of the overtaken vehicle"); *People v. Escarcega*, 32 Cal App. 5th 362, 372 (2019) ("Passing is *only* legal if it is *safe*.").

17. Foshee's own negligence, without which his soft tissue injuries would not have occurred, was also a substantial factor in causing his injuries.

**C.     Comparative Fault**

18. "The comparative fault doctrine is designed to permit the trier of fact to consider all relevant criteria in apportioning liability . . . to arrive at an equitable apportionment or allocation of loss." *Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1285 (2013), *as modified on denial of reh'g* (Nov. 27, 2013) (internal quotation marks omitted).

19. "Under the doctrine of comparative fault, the original tortfeasor's liability is reduced if: (1) plaintiff or a nonparty was negligent, and (2) the negligence of plaintiff or the nonparty was a substantial factor in causing the plaintiff's harm." *Lewis v. United States*, No. 2:15-cv-08354-CAS (ASx), 2017 WL 2311874, at *5 (C.D. Cal. May 24,

2017) (citing CACI Nos. 405, 406). "Comparative fault reduces a plaintiff's recovery in proportion to his or her share of fault." *Pedroza v. United States*, No. 5:20-cv-00131-CJC (KKx), 2021 WL 4441974, at *5 (C.D. Cal. Sept. 27, 2021) (citing *Li v. Yellow Cab Co. of Calif.*, 13 Cal. 3d 804, 824 (1975)).

20. The United States has the burden of proving Foshee's comparative fault. *Pfeifer*, 220 Cal. App. 4th at 1285.

21. The preponderance of the evidence demonstrates that both Haidary and Foshee acted negligently and contributed in approximately equal measure to Foshee's injuries. As such, the Court apportions fault equally between the parties.

**D.  Damages**

  *i.  Economic Damages*

22. Foshee may recover past medical expenses that were both actually and reasonably incurred as a result of the collision. *See Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal. 4th 541, 555 (2011); *Lewis*, 2017 WL 2311874, at *10 (citing CACI No. 3903A). The amount recoverable is limited to "the lesser of (1) the amount paid or incurred for past medical expenses and (2) the reasonable value of the services." *Corenbaum v. Lampkin*, 215 Cal. App. 4th 1308, 1325–26 (2013).

23. The United States is not liable for Foshee's preexisting conditions or the natural progression of those conditions. *See, e.g.*, *Whyatt v. Kukura*, 157 Cal. App. 2d 803, 805 (1958) (finding defendant not liable for plaintiff's "preexisting condition of osteoarthritis" of spinal bones, which was "not caused by the accident").

24. The United States is liable for only those damages caused by the collision that are over and above the natural progression of Foshee's preexisting conditions. *Id.* (finding defendant not liable for most of plaintiff's claimed damages because plaintiff's injuries and damages "were chargeable very largely to preexisting causes").

25. Foshee bears the burden to prove that his damages are caused by the collision and would not have occurred anyway because of his preexisting conditions. *Lewis*, 2017 WL 2311874, at *6.

26. Foshee has not met his burden of proof in establishing that all of his past medical care was reasonably required and attributable to the collision. Much of that care, including the chiropractic and physical therapy beyond the first eighteen sessions, the injections, and the spinal fusion surgery, was not reasonably required for the moderate back and neck soft tissue strain that Foshee sustained in the collision.

27. Dr. Rudin credibly testified that reasonable medical expenses for Foshee's injuries caused by the collision would include the March 6, 2021 Kaiser Urgent Care visit, a follow up visit, anti-inflammatory and muscle relaxant medications, and twelve to eighteen chiropractic or physical therapy appointments.

28. Dr. Mobin's recommendations regarding medical expenses are not reasonable; they are excessive considering the moderate forces involved in the collision.

29. Applying Roughan's methodology and using Roughan's billing records to identify the reasonable cost of Dr. Rudin's identified reasonable treatment, Foshee incurred **$6,497.80** in past medical expenses for medical care that was reasonably required and attributable to the collision.

30. With respect to future medical care, a plaintiff is entitled to recover the reasonable value of reasonably necessary medical care that he is reasonably certain to need in the future as a result of the collision. *Cuevas v. Contra Costa County*, 11 Cal. App. 5th 163, 183 (2017) (quoting CACI No. 3903A as "an accurate statement of the law").

31. Foshee has not met his burden of proof in establishing entitlement to future medical expenses related to the collision.

   ii.   *Non-Economic Damages*

32. In California, a plaintiff may recover non-economic damages for past and future pain and suffering. *See Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1665 (1994) ("Garden-variety pain and suffering defies a nice standard for calculation."). The test for determining non-economic damages "is one of reasonable compensation." *Hilliard v. A. H. Robins Co.*, 148 Cal. App. 3d 374, 412 (1983). A plaintiff may recover future

non-economic damages only for pain and suffering that it is "reasonably certain . . . will follow." *Bellman v. S.F. High Sch. Dist.*, 11 Cal. 2d 576, 588 (1938).

33. Where a plaintiff is comparatively at fault, the amount of non-economic damages is reduced according to the apportionment of fault. *Li*, 13 Cal. 3d at 828–29.

34. The United States concedes that Foshee is entitled to non-economic damages for past pain and suffering. It provides case examples with proposed analogous facts where courts awarded reasonable non-economic damages.

35. Foshee's request for $1,000,000 in past non-economic damages is excessive and unreasonable.

36. Having considered the evidence Foshee presented regarding the pain, suffering, and anxiety he experienced during, and after, the incident, as well as numerous factually analogous cases with past non-economic damages awards, the Court finds that Foshee's non-economic damages for pain and suffering are **$25,000.00**.

37. Foshee has not met his burden of proof in establishing entitlement to future non-economic damages related to the collision.

    *iii.*    *Total Damages Recoverable & Apportionment*

38. Foshee establishes an entitlement to past economic damages of $6,497.80 and past non-economic damages of $25,000.00, for a total damages sum of $31,497.80.

39. Accounting for Foshee's equal fault, his total recoverable damages are reduced by half, to **$15,748.90**.

## IV. CONCLUSION

In light of the Court's findings of fact and conclusions of law, the Court **ORDERS** the parties to confer and lodge a stipulated form of final judgment no later than **fourteen (14) days** from the date of this order.

**IT IS SO ORDERED.**

October 9, 2025

                                              _____
                                                   **OTIS D. WRIGHT, II**
                                       **UNITED STATES DISTRICT JUDGE**